**E-Filed 2/1/07**

NOT FOR CITATION

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| THE PICAYUNE RANCHERIA OF THE CHUKCHANSI INDIANS,<br>Plaintiff,<br>v.<br>COUNTY OF MADERA, et al.,<br>Defendants. | Case Number C 06-7613 JF (PVT)<br><br>ORDER[1] (1) VACATING HEARING ON DEFENDANTS' MOTION TO DISMISS; (2) DENYING DEFENDANTS' MOTION; AND (3) REQUESTING SUPPLEMENTAL LETTER BRIEFING ON PLAINTIFF'S PENDING MOTION FOR PRELIMINARY INJUNCTION<br><br>[re: doc. nos. 2, 25] |

On January 3, 2007, Defendants, the County of Madera and its board of supervisors, tax assessor, treasurer/collector, planning director and planning department (collectively "the County"), filed the instant motion to dismiss this action for lack of subject matter jurisdiction. Defendants' motion was set for hearing on February 2, 2007. After the County's motion was filed but before the scheduled hearing date, the Court requested and received briefing on the issue of subject matter jurisdiction in connection with an earlier motion for preliminary injunction filed by Plaintiff, The Picayune Rancheria of Chukchansi Indians ("the Tribe"). The Tribe did not file

[1] This disposition is not designated for publication and may not be cited.

separate opposition to the County's motion to dismiss, presumably because the issue of subject matter jurisdiction has been fully briefed and argued in connection with the Tribe's motion for preliminary injunction, which was heard on January 19, 2007.

For the reasons discussed below, the Court concludes that it has subject matter jurisdiction over the Tribe's complaint. Accordingly, the Court will vacate the hearing date on the County's motion and deny that motion. With respect to the Tribe's pending motion for preliminary injunction, the Court concludes that additional information regarding the status of the pending state court nuisance abatement action is necessary to resolution of the motion. Accordingly, the Court will request that the parties file supplemental letter briefs within ten days of the date of this order.

**I. BACKGROUND**

The instant action is one of several arising out of disputes between the Tribe and the County.

Hardwick v. United States

In 1979, individuals from thirty-four Indian tribes that had been terminated by the United States filed suit in the Northern District of California, seeking restoration of their status as Indians and entitlement to federal Indian benefits, as well as the right to reestablish their tribes as formal government entities. *Hardwick v. United States*, Case No. C 79-1710. Two stipulated judgments were entered in that case: the 1983 stipulated judgment resulted in the United States restoring the Tribe's status as an Indian tribe, and the 1987 stipulated judgment resulted in the County's agreement to treat the Tribe's lands as "Indian Country" and to refrain from imposing any taxes on those lands other than *ad valorem* taxes. The Tribe subsequently reacquired tribal lands that had been sold to non-Indian individuals following termination of the Tribe, and constructed a casino on those lands. After completion of the casino, the County asserted that the Tribe was subject to annual *ad valorem* taxes in excess of $4 million and filed a motion to enforce the 1987 stipulated judgment in an effort to collect those *ad valorem* taxes. This Court denied the County's motion after concluding that the Tribe was not a party to, and was not bound by, the 1987 stipulated judgment. The Court stated explicitly that it was *not* resolving the

question of whether the County had authority to impose *ad valorem* taxes separate and apart from the 1987 stipulated judgment; the Court's holding was limited to a finding that *the 1987 stipulated judgment* did not give the County such authority. *See* Order Denying Motion For Reconsideration filed 10/13/04 at 6.

*In Rem* Action:

In October 2004, the County filed an *in rem* action in Madera Superior Court, seeking declaratory relief as to the taxability of the Tribe's lands. *County of Madera v. 48.53 Acres of Land*, Case No. MCV 025339. On December 1, 2006, the Madera Superior Court denied the Tribe's motion to dismiss, holding that it had *in rem* jurisdiction over the Tribe's lands. That action is pending.

Tribe's Motion To Enforce Hardwick 1987 Stipulated Judgment:

The Tribe has begun an expansion project intended to add a hotel and spa facilities to the casino on its lands. The County has asserted that the Tribe is subject to local and state health, safety and environmental laws. The Tribe has declined to follow the necessary procedures to obtain County permits for construction of the hotel and spa. Instead, in October 2006, the Tribe filed a motion to enforce the 1987 stipulated judgment in the *Hardwick* action, asserting that the judgment precludes the County from imposing local and state law requirements on the Tribe's construction. This Court denied the Tribe's motion, concluding that the issues raised in the Tribe's motion went beyond the scope of the 1987 stipulated judgment and more properly should be presented in a new action for declaratory relief. The Court indicated that if the Tribe were to file such an action in the Northern District of California, the Court would relate such action to the earlier-filed *Hardwick* action for reasons of judicial efficiency.

Nuisance Abatement Action:

In November 2006, the County issued stop-work notices to the Tribe and its contractors because various County construction permits had not been obtained. The Tribe refused to stop work. On November 21, 2006, the County filed a nuisance abatement action in Madera Superior Court, alleging a number of state law claims arising out of the Tribe's construction. The Tribe removed the action to the United States District Court for the Eastern District of California,

which remanded the action to the Madera Superior Court on December 18, 2006.

Instant Declaratory Relief Action:

The Tribe filed the instant action on December 13, 2006, seeking declaratory and injunctive relief. Specifically, the Tribe seeks a declaration that its lands are not subject to *ad valorem* or other taxes and are not subject to state and local land use, building, environmental or other regulations. The Tribe seeks to enjoin the County from attempting to collect taxes or attempting to impose state or local requirements on the Tribe's construction. The Tribe also seeks to preclude the County from litigating the two pending state court actions against the Tribe and its lands.

This Court denied the Tribe's application for a temporary restraining order on December 21, 2006 after concluding that there were serious questions as to this Court's subject matter jurisdiction over the Tribe's complaint, and, assuming that it has jurisdiction, as to whether this Court should abstain in light of the pending state court actions. The Court requested supplemental briefing on the issues of subject matter jurisdiction and abstention and set a hearing on the Tribe's motion for preliminary injunction. That hearing was held on January 19, 2007 and the Tribe's motion for preliminary injunction thereafter was submitted.

## II. DISCUSSION

As an initial matter, the Court notes that following oral argument and submission of the Tribe's motion, the Tribe filed an unsolicited letter brief dated January 19, 2007, setting forth further argument on the issue of subject matter jurisdiction. The County subsequently filed a letter brief objecting to the Tribe's letter brief. The Court declines to consider the Tribe's letter brief, as it was filed without leave of the Court after the matter was submitted. The Court notes, however, that the Tribe's letter brief cites authorities previously cited or already familiar to the Court. Accordingly, the Court's decision to disregard the Tribe's letter brief does not affect the Court's analysis of the pending motion.

### A. Subject Matter Jurisdiction

At the start of the hearing on the Tribe's motion for preliminary injunction, the Court stated its tentative view that subject matter does not exist because the Tribe's federal claims

appear to be merely defenses to the County's state court actions. Having considered the parties' arguments and reexamined the applicable authorities, the Court now is persuaded that this tentative view was incorrect.

Federal district courts have jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. District courts likewise have jurisdiction over "all civil actions, brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1362. Under both statutes, the question is whether the claim "arises under" the Constitution, laws or treaties of the United States. In order to meet the "arising under" requirement, the plaintiff's well-pleaded complaint must establish either that federal law creates the claim, or that the plaintiff's asserted right depends on the resolution of a substantial question of federal law. *Franchise Tax Board of California v. Construction Laborers Vacation Trust For Southern California*, 463 U.S. 1, 27-28 (1983). "[W]here the federal issue would arise *only* as a defense to a state cause of action," there is no federal jurisdiction. *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 153-54 (1908).

The Tribe asserts that the County and its officials are interfering with the Tribe's rights as guaranteed by the federal Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2701 *et seq*. The Tribe also asserts that its assertion of its rights to occupy and control its tribal lands is an independent source of federal jurisdiction.

With respect to the Tribe's argument based upon the IGRA, the Supreme Court has held as follows:

> It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights. *See Ex parte Young,* 209 U.S. 123, 160-162, 28 S.Ct. 441, 454-455, 52 L.Ed. 714 (1908). A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve.

*Shaw v. Delta Air Lines, Inc.* , 463 U.S. 85, 96 n. 14 (1983); *see also Verizon Maryland, Inc. v. Public Services Commission*, 535 U.S. 635, 642 (2002) (holding that federal courts had subject matter jurisdiction over plaintiff's action to enjoin state officials from enforcing state and local

regulations on ground that such regulations were preempted by federal law). The Tribe's complaint asserts that County officials are attempting to interfere with the Tribe's rights as guaranteed by the IGRA. Under *Shaw* and *Verizon*, this Court has subject matter jurisdiction to resolve the preemption issue presented by the Tribe's claim.

The County argues that the IGRA has been raised only as a *defense* to the County's pending state court nuisance action, and thus does not provide a basis for federal jurisdiction. However, the Tribe clarified during oral argument that its concerns regarding the County's attempts to regulate the Tribe's lands go far beyond the two construction permits at issue in the state court nuisance action. In fact, the Tribe seeks a determination that the County may not impose *any* state or local regulations on any tribal gaming facilities, whether such facilities currently exist, are under construction, or are planned for the future.

The County points out that following the Tribe's removal of the nuisance abatement action to the Eastern District of California, District Judge Ishii remanded the action to Madera Superior Court, providing the following reasoning:

> The permits at issue appear to be general construction permits and do not appear to be aimed specifically at gaming or casinos. Importantly, the nuisance abatement claim does not attempt to stop the Tribe from conducting gaming at its casino. The County's claim does not, for example, attempt to shut down the casino, to limit the number of slot machines that are on the premises, to limit the types of games that are played in the casino, or to regulate how the games are played. Instead, the suit seeks to halt construction of the hotel and spa.

However, in light of the specific allegations of the Tribe's complaint in the instant action, as well as the evidence submitted in connection with the Tribe's motion for preliminary injunction, this Court is not persuaded that Judge Ishii's remand order is determinative with respect to the jurisdictional question presented here.

Judge Ishii concluded that the basis for the County's nuisance abatement action was the Tribe's failure to obtain a demolition permit and a grading permit in connection with construction of a hotel and spa, and concluded that the IGRA was not implicated because there was no connection between gaming and construction of a "hotel and spa." However, the Ninth Circuit has made clear that questions of IGRA preemption turn upon the language of the Tribal-State Compact entered into by the Indian tribe and the State. *Confederated Tribes of Siletz*

*Indians v. Oregon*, 143 F.3d 481, 484-85 (9th Cir. 1998). In the instant case, the Compact between the Tribe and the State of California expressly defines "Gaming Facility" as follows:

> *any building in which Class III gaming activities or gaming operations occur*, or in which the business records, receipts, or other funds of the gaming operation are maintained (but excluding offsite facilities primarily dedicated to storage of those records, and financial institutions), *and all rooms, buildings, and areas, including parking lots and walkways, a principal purpose of which is to serve the activities of the Gaming Operation*, provided that nothing herein prevents the conduct of Class II gaming (as defined under IGRA) therein.

Compact, Sec. 2.8. (emphasis added). The Tribe has presented evidence in the present action that the principal purpose of the hotel and spa is to facilitate the casino's gaming operation. Tom Galt, the vice president of project management for the expansion project, has provided a declaration describing the planned expansion of the original casino complex. The original complex includes a six-story hotel tower with 192 guest rooms, restaurants, a parking lot, 1800 slot machines and forty-seven gaming tables. Galt Decl. ¶ 6. The expansion project will add a new eleven-story hotel tower, which will include 220 rooms and suites, some of which will be designed for private table gaming, a spa in the basement and a new restaurant. *Id.* at ¶¶ 7, 9-10. The new hotel tower will be physically connected to the existing casino such that guests will be able to access the new tower directly from the gaming floor. *Id.* at ¶ 9. These and other renovations are intended to attract more and higher end customers, encourage longer guest stays and in general increase revenues from gaming. *Id.* at ¶ 11. Based upon this evidence, it appears that the new construction falls squarely within the Compact's definition of "Gaming Facility."

The Compact expressly provides that construction and expansion of gaming facilities are governed by "the building and safety codes of the Tribe." Compact, Secs. 6.4.2(b), (c). The Compact describes a comprehensive regulatory scheme under which the Tribe's building and safety codes shall be implemented, and provides mechanisms for resolution of disputes between the Tribe and the State arising out of the Compact. Because questions of IGRA preemption are controlled by the language of the applicable compact, *Siletz*, 143 F.3d at 484-85, and the construction at issue here falls squarely within the Compact between the Tribe and the State of California, this Court concludes that state and local regulatory requirements are preempted.

As noted above, the Tribe also asserts federal jurisdiction on the ground that it seeks a

declaration of its rights to occupy and control its tribal lands. In *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661 (1974), an Indian tribe sued to recover the fair rental value of lands ceded to the state on the theory that cession was invalid. The district court dismissed the suit for lack of subject matter jurisdiction, holding that the tribe's claim arose under state law and thus did not raise a question "arising under" the laws of the United States as required by §§ 1331 and 1362. The Supreme Court held that the tribe's asserted right to possession of the lands was based upon federal law; that the tribe's claim was not so insubstantial or devoid of merit to preclude a federal controversy; and that the tribe's claim was not one in which "the underlying right or obligation arises only under state law and federal law is merely alleged as a barrier to its effectuation." *Oneida*, 414 U.S. at 675. Similarly, in the instant case, the Tribe seeks a declaration that it has rights to occupy and control its lands without interference from County officials because those lands have been designated and in fact constitute "Indian Country." The Tribe has made clear that it does not raise this claim merely as a defense to the County's current litigation regarding specific taxation and regulation issues, but rather seeks a broader declaration that the County cannot exert regulatory authority of any kind over the Tribe or its lands. The Court concludes that under *Oneida*, the Tribe has stated an alternative basis for federal jurisdiction.

The County argues that, irrespective of the jurisdictional issues addressed above, this Court cannot assert subject matter in *this* case because the Madera Superior Court has exerted prior exclusive jurisdiction over the Tribe's lands. "If a court of competent jurisdiction, Federal or state, has taken possession of property, or by its procedure has obtained jurisdiction over the same, such property *is withdrawn from the jurisdiction of the courts of the other authority* as effectually as if the property had been entirely removed to the territory of another sovereignty." *State Engineer of State of Nevada v. South Fork Band of Te-Moak Tribe of Western Shoshone Indians of Nevada*, 339 F.3d 804, 809 (9th Cir. 2003) (quoting *Palmer v. Texas*, 212 U.S. 118, 125 (1909)). However, while this rule would preclude the Tribe from asserting a competing *in rem* action in this Court, it does not preclude the Tribe from pursuing an *in personam* action against the County and its officials. *See Donovan v. City of Dallas*, 377 U.S. 408, 412-13 (1964).

**B. Preliminary Injunction**

Having concluded that subject matter jurisdiction exists, the Court must address the merits of the Tribe's motion for preliminary injunction. A party seeking a preliminary injunction must show either (1) a likelihood of success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits and the balance of hardships tipping in the movant's favor. *Roe v. Anderson*, 134 F.3d 1400, 1401-02 (9th Cir. 1998); *Apple Computer, Inc. v. Formula Int'l, Inc.*, 725 F.2d 521, 523 (9th Cir. 1984). These formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. *Roe*, 134 F.3d at 1402.

With respect to the Tribe's request that the Court enjoin the County from attempting to impose *ad valorem* taxes, the Court perceives no possibility of irreparable injury if the requested injunction does not issue. The tax dispute does not threaten any ongoing operations of the Tribe or its casino; it is merely a dispute about money. Accordingly, the Court's tentative view is that the Tribe is not entitled to an injunction with respect to the County's attempts to litigate the tax issue.

With respect to the Tribe's request that the Court enjoin the County from attempting to impose state and local building codes upon the casino expansion project, the Court tentatively concludes that the Tribe has demonstrated a likelihood of success on the merits. As discussed above, it appears that the expansion project falls squarely within the contours of the IGRA and the Tribal-State Compact, and thus that the project is governed by the Tribe's building codes rather than state and local building codes. Moreover, because the County is actively attempting to stop work on the expansion project, the Tribe may suffer concrete and irreparable injury if an injunction does not issue precluding the County from litigating the state court nuisance abatement action or otherwise attempting to interfere with the expansion project.

However, because the injunction requested in this case implicates pending state court proceedings and thus raises significant issues of comity, it is relevant to the Court's determination whether the earlier-filed state court nuisance abatement action provides an adequate forum for the Tribe to raise its IGRA preemption argument. If that action does provide

such a forum, and if it is significantly further along than the instant declaratory relief action, this Court may conclude that no irreparable injury would result from denial of the Tribe's motion for preliminary injunction. In the same vein, this Court could conclude that it should defer to the parallel state court proceeding under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). On the other hand, if the state court nuisance abatement action does not provide an adequate forum for the Tribe to litigate its IGRA preemption argument, this Court would be more likely to conclude that the Tribe has demonstrated the possibility of irreparable injury and the impropriety of abstention. Of particular interest to this Court is the effect on the state court nuisance abatement action, if any, of District Judge Ishii's determination that IGRA does not apply to the County's efforts to enforce state and local building codes. In other words, does Judge Ishii's ruling operate to preclude the Tribe from arguing in the state court nuisance abatement action that IGRA and the Tribal-State Compact preempt state and local building codes?

The Court asks that the parties submit supplemental letter briefs addressing these issues within ten days after issuance of this order.

## III. ORDER

(1) The February 2, 2007 hearing on the County's motion to dismiss for lack of subject matter jurisdiction is VACATED;

(2) The County's motion to dismiss for lack of subject matter jurisdiction is DENIED;

(3) The parties shall, within ten (10) days from the date of this order, submit supplemental letter briefs addressing the status of the state court nuisance abatement action and, in particular, whether that action provides an adequate forum for the Tribe to assert its argument that the IGRA preempts state and local building codes with respect to the casino expansion project.

DATED: 2/1/07

JEREMY FOGEL
United States District Judge

Copies of Order served on:

Steven John Bloxham sbloxham@ndnlaw.com, bniegemann@ndnlaw.com

Dennis Michael Cota dcota@cotalawfirm.com, rwade@cotalawfirm.com

Darcie Lynn Houck dhouck@ndnlaw.com, bniegemann@ndnlaw.com; knelson@ndnlaw.com

Patricia Rae Lenzi plenzi@ndnlaw.com

John M. Peebles jpeebles@ndnlaw.com

Michael Arthur Robinson mrobinson@ndnlaw.com