1  DENNIS M. COTA, Bar No. 127992
   DEREK P. COLE, Bar No. 204250
2  COTA DUNCAN & COLE
   2241 Douglas Boulevard, Suite 250
3  Roseville, California 95661
   Telephone:    (916) 780-9009
4  Facsimile:    (916) 780-9050

5  Attorneys for Defendants
   The County of Madera, The Board of Supervisors of
6  the County of Madera, Thomas P. Kidwell, Tracy
   Desmond Kennedy, Rayburn Beach, and The County
7  of Madera Planning Department

8

9                UNITED STATES DISTRICT COURT

10         FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12  The PICAYUNE RANCHERIA OF             Case No. 06-CV-07613 JF PVT
    CHUKCHANSI INDIANS, a federally
13  recognized Indian Tribe,              STIPULATION RE SETTLEMENT
                                          AND REQUEST FOR CONTINUING
14               Plaintiff,               JURISDICTION, FOR ENFORCEMENT
                                          OF SETTLEMENT AGREEMENT;
15       v.                               [PROPOSED] ORDER

16  The COUNTY OF MADERA, a political
    subdivision of the State of California; The
17  BOARD OF SUPERVISORS OF THE
    COUNTY OF MADERA; THOMAS P.
18  KIDWELL, County of Madera Tax Assessor;
    TRACY DESMOND KENNEDY, County of
19  Madera Treasurer/Collector; RAYBURN
    BEACH, County of Madera Planning Director;
20  The COUNTY OF MADERA PLANNING
    DEPARTMENT,
21
                 Defendants.
22

23

24

25

26

27

28

1    IT IS HEREBY STIPULATED by and between the COUNTY OF MADERA, a political

2    subdivision of the State of California; the BOARD OF SUPERVISORS OF THE COUNTY OF

3    MADERA; THOMAS P. KIDWELL, County of Madera Tax Assessor; TRACY DESMOND

4    KENNEDY, County of Madera Treasurer/Tax Collector; RAYBURN BEACH, County of

5    Madera Planning Director; the COUNTY OF MADERA PLANNING DEPARTMENT

6    (collectively, "County"), and the PICAYUNE RANCHERIA OF THE CHUKCHANSI

7    INDIANS, a federally recognized Indian Tribe ("Tribe") that the above-entitled action has been

8    settled pursuant to the terms of the written Settlement Agreement and Stipulation to Jurisdiction

9    ("Agreement"), attached hereto as Exhibit A and incorporated by reference.

10    By the terms of the Agreement, these Stipulating Parties (hereafter, "Stipulating Parties")

11    consisting of the County and the Tribe, along with settling parties, Chukchansi Economic

12    Development Agency ("CEDA"), the Yosemite Unified School District ("Schools"), and

13    McCarthy Building Companies, Inc. ("McCarthy"), have contracted and agreed to resolve all

14    pending disputes under the terms and provisions set forth in Exhibit A, which terms include

15    various dispute resolution provisions as set forth therein.  Pursuant to those dispute resolution

16    provisions:

17    IT IS HEREBY STIPULATED that the jurisdiction of United States District Court for

18    the Northern District of California, as currently in place over all parties to the instant action, shall

19    continue for purposes of determining the application, interpretation, and enforcement of the

20    Agreement attached hereto as Exhibit A.

21    These Stipulating Parties further each stipulate, acknowledge, and agree that the

22    sovereign immunity of the Tribe and CEDA shall be expressly waived for purposes of any legal

23    action or proceedings for purposes of determining the application, interpretation, or enforcement

24    of the Agreement attached as Exhibit A.

25    These Stipulating Parties further stipulate, agree, and request that the continuing

26    jurisdiction of this Court shall apply to further actions or legal proceedings regarding the

27    application, interpretation, and enforcement of the Memorandum of Understanding executed by

28    the Tribe and the County concurrently with the Settlement Agreement, attached hereto as

-1-

1    Exhibit B and incorporated by reference.  The parties stipulate and agree that the limited waiver

2    of sovereign immunity by the Tribe and CEDA shall extend to actions for legal proceedings

3    regarding the application, interpretation, and enforcement of the 2007 MOU described herein.

4            IT IS SO STIPULATED.

5
     Dated:  February 27, 2007                    COTA DUNCAN & COLE
6

7                                                 By:    /s/ Dennis M. Cota
                                                  Dennis M. Cota
8                                                 Attorneys for Defendants
                                                  The County of Madera, The Board of
9                                                 Supervisors of the County of Madera,
                                                  Thomas P. Kidwell, Tracy Desmond
10                                                Kennedy, Rayburn Beach, and The
                                                  County of Madera Planning Department
11

12   Dated:  February 28, 2007                    TRAINOR FAIRBROOK

13
                                                  By:    /s/ Gary M. Funamura
14                                                Gary M. Funamura
                                                  Attorneys for Defendant
15                                                McCarthy Building Companies, Inc.

16
     Dated:  February 28, 2007                    MONTEAU & PEEBLES LLP
17

18                                                By:    /s/ John M. Peebles
                                                  John M. Peebles
19                                                Attorneys for Plaintiff
                                                  The Picayune Rancheria of Chukchansi
20                                                Indians

21
             AGREED AND ACCEPTED:
22

23   Dated:  February 27, 2007                    DEGOEDE DUNNE & MARTIN

24
                                                  By:    /s/ Raymond W. Dunne
25                                                Raymond W. Dunne
                                                  Attorneys for Yosemite Unified School
26                                                District

27

28

1   Dated: February 28, 2007            MONTEAU & PEEBLES LLP

2

3                         By:   /s/ John M. Peebles
                              John M. Peebles

4                               Attorneys for Chukchansi Economic
                              Development Agency

5

6                                 **ORDER**

7

8          IT IS ORDERED that the above-entitled action shall be deemed settled pursuant to the

9 terms of the Agreement attached hereto as Exhibit A. IT IS FURTHER ORDERED that this

10 Court shall retain jurisdiction for purposes of any action or proceeding regarding the application,

11 interpretation, and enforcement of either the Agreement attached hereto as Exhibit A, or the

12 Memorandum of Understanding executed concurrently and attached hereto as Exhibit B. For

13 purposes of any such proceedings or action regarding the application, interpretation, and

14 enforcement of either the Agreement or the MOU, the Tribe and CEDA have waived sovereign

15 immunity and stipulated to the jurisdiction and authority of this Court for purposes of such

16 proceedings.

17          IT IS SO ORDERED.

18

19 Dated:_____             _____

20                                 Jeremy Fogel
                                United States District Court Judge

21

22

23

24

25

26

27

28

STIPULATION RE SETTLEMENT AND REQUEST FOR CONTINUING JURISDICTION; [PROPOSED] ORDER
Case No. 06-CV-07613 JF PVT

# EXHIBIT A

## SETTLEMENT AGREEMENT AND STIPULATION TO JURISDICTION

The following Settlement Agreement and Stipulation to Jurisdiction ("Agreement") is entered into by and between the County of Madera, a Political Subdivision of the State of California, Thomas P. Kidwell, Madera County Assessor, Tracy Kennedy-Desmond, Madera County Treasurer-Tax Collector (collectively hereafter "Madera" or "County") and the Picayune Rancheria of the Chukchansi Indians ("Tribe"), the Chukchansi Economic Development Agency ("CEDA"), the McCarthy Building Companies, Inc. ("McCarthy") and the Yosemite Unified School District (hereafter "Schools"), each of which settling parties are hereafter collectively referred to as "Parties" for purposes of facilitating resolution of the pending disputes between Madera and the Tribe regarding: (1) ad valorem property taxes claimed by the County on 48.53 acres owned by the Tribe and within the original Rancheria boundaries in the County of Madera ("Subject Property"); (2) the assertion by the County of jurisdiction related to construction activities of the Tribe within the Subject Property; (3) the County's demands for arbitration for alleged violations of the Memorandum of Understanding entered into 2001 between the Parties ("2001 MOU"); and (4) the County's objections to the Tribe's application to have the Subject Property accepted into trust by the United States for the benefit of the Tribe.

## RECITALS

A.      The Picayune Rancheria of the Chukchansi Indians currently owns in fee various real property within the County of Madera, including but not limited to 48.53 acres of real property, more particularly identified as Assessor's Parcel Nos. 054-330-092-000 and 054-330-093-000, on which the Tribe has developed hotel and casino facilities known as the Chukchansi Gold Resort and Casino ("Subject Property").

B.      The Madera County Assessor's Office has assessed _ad valorem_ property taxes against the Subject Property commencing on January 1, 2003, based on the assessed value of the land and improvements thereon.  The Tribe has objected to any such assessment, asserting that the Rancheria lands which constitute the Subject Property are not subject to taxation regardless of whether such property is owned in fee by the Tribe or held in trust for the benefit of the Tribe.  Furthermore, the Tribe objects to the amount of such assessment.  The Tribe has refused to pay _ad valorem_ property taxes on the Subject Property.

C.      On or about March 24, 2003, the Tribe applied to the United States Department of the Interior seeking to have the Subject Property accepted into trust by the United States of America for the benefit of the Tribe (hereafter "Trust Application").   The Department of the Interior proceeded to process the Trust Application and on September 15, 2004, published notice in the Federal Register of the Final Agency Determination to take into the trust the subject 48.53 acres of real property owned by the Tribe.   Thereafter, in or about October 2004, Madera opposed the proposed acceptance into trust based on the pending dispute regarding unpaid _ad valorem_ property taxes.  Completion of the Tribe's Trust Application and acceptance of the Subject Property into trust has remained suspended pending resolution of the _ad valorem_ property tax dispute between the Tribe and Madera.  The County and Tribe agree that had the Subject Property gone into trust, it would not be subject to ad valorem  taxes and/or State, County or local regulation including but not limited to land use, building and construction, and environmental regulations, and that but for the County's objections to trust acceptance, the potential tax exposure for the Subject Property would have terminated.

D.      Litigation outstanding between the Tribe and Madera includes the action entitled _County of Madera, et al. v. 48.53 Acres Held in Fee Title by Picayune Rancheria of_

*the Chukchansi Indians*, Madera County Superior Court Case No. MCV02533, (hereinafter the "Tax Action"), in which the County has sought declaratory relief as to the application of ad valorem property taxes to the Subject Property. By this Agreement, the Tribe and Madera settle the Tax Action in conjunction with the terms set forth herein.

E.  Litigation outstanding between the Tribe and Madera includes the action entitled County of Madera v. Picayune Rancheria of the Chukchansi Indians, et al, Madera County Superior Court Case No. MCV035035 (hereinafter the "Nuisance Action"), in which the County has sought an injunction against construction activities of the Tribe and McCarthy within the Subject Property until the Tribe has secured County permits. By this Agreement, the Tribe, McCarthy and Madera settle the Nuisance Action in conjunction with the terms set forth herein.

F.  Litigation outstanding between the Tribe and Madera includes the action entitled The Picayune Rancheria of Chukchansi Indians v. the County of Madera, et al., United States District Court for the Northern District of California Case No. C06-07613 (hereinafter the "Tribal Action"), in which the Tribe has sought an injunction against the County to prohibit the County interfering with Tribal jurisdiction and exercising jurisdiction within the Subject Property for County land use regulations and County ad valorem taxes. The Tribe will amend the pleading to name CEDA as an additional plaintiff and the Schools as an additional defendant in the Tribal Action. By this Agreement, the Tribe, CEDA, the Schools, and Madera settle the Tribal Action in conjunction with the terms set forth herein.

G.  Arbitration outstanding between the Tribe and Madera includes demands for arbitration made by the County against the Tribe under the dispute resolution provisions of the 2001 MOU requesting relief for various alleged violations of the

2001 MOU ("MOU Arbitration Actions").  By this Agreement, the Tribe and Madera settle the MOU Arbitration Actions in conjunction with the terms set forth herein.

For consideration described and acknowledged herein, Madera, Tribe, CEDA, McCarthy and Schools agree as follows:

## AGREEMENT

1.0     Tax Dispute:  By the terms set forth herein, Madera County, the Schools, McCarthy, the Tribe and CEDA desire to resolve the Tax Action, the Nuisance Action, the Tribal Action, and the MOU Arbitration Action, and any related or outstanding claims associated with the assessment or collection of <u>ad valorem</u> property taxes or land use regulation for the Subject Property.

1.1     The Madera County Tax Assessor has recognized an amended value of the land, hotel and casino facilities on the Subject Property, which value is based on audited financial statements made available to the County from the Tribe.  The amended valuation of the Subject Property results in a revised <u>ad valorem</u> property tax calculation for the Subject Property for the period from 2003 to the date of this Agreement.

1.2     The County contends that the Tribe owes ad valorem property taxes on the Subject Property consistent with the amended valuation.  The Tribe contends that the Subject Property is not subject to any <u>ad valorem</u> property taxes.  This dispute has not been subject to final adjudication.  In resolution of this dispute, the parties agree to settle under the terms set forth in paragraph 2.0 below.

**2.0    Settlement**

2.1    For the purposes of settling the Tax Action, Nuisance Action, Tribal Action, and MOU Arbitration Actions, and to eliminate the further accrual of litigation expenses by all Parties, the Tribe agrees to make the following settlement payment:

2.1.1    Payment in the amount of two million five hundred fifty-three thousand five hundred forty-two dollars ($2,553,542.00) apportioned as follows:

2.1.1.1 Eight hundred thousand dollars ($800,000.00) to the Madera County General Fund.

2.1.1.2 Seven hundred and fifty thousand dollars ($750,000.00) to the Yosemite Unified School District.

2.1.1.3 One million three thousand five hundred forty-two dollars ($1,003,542.00) to be deposited into a trust account. The trustee of such trust account shall be the Tribal/County Advisory Committee ("Committee") established pursuant to the Memorandum of Understanding between the Tribe and the County attached hereto and incorporated by reference as Addendum "A" (hereafter "2007 MOU"). The monies in such trust account shall be disbursed by the Committee pursuant to procedures established by the Committee for the benefit of the Tribe and County.

2.1.2    The Tribe will establish and maintain a trust account into which the Tribe will deposit the sum of one million dollars ($1,000,000.00) each year for a period of ten (10) years commencing in 2007. The Tribe shall be the trustee of the trust account. Each calendar year the County shall accept

applications for disbursement of these trust funds. Qualified applicants will be limited to Madera County agencies, Schools, and non-profit organizations of Madera County. The Tribe and the County shall have the sole and exclusive authority to determine qualified applicants and beneficiaries. The County Board of Supervisors will review and forward to the Tribe all applications along with Board recommendations. The Tribe shall allocate all monies ($1,000,000.00 per annum) in said trust account by December 1st of each calendar year. Any monies remaining after December 1st of each calendar year shall be disbursed equally to Yosemite Unified School District, Oak Creek Middle School of the Bass Lake Unified School District, Community Medical Center-Oakhurst, a facility owned and operated by Community Medical Centers, a California non-profit corporation and Manna House-Oakhurst.

2.1.3   The Tribe will establish and fund a consultant grant writer, at a cost of up to twenty thousand dollars ($20,000.00) per year, who will write grants for the benefit of joint County, Tribe and Schools projects. The Tribe agrees to fund this grant writer program for a period of five (5) years.

2.2   These payments are made without acknowledgment of tax liability of the Tribe, and in the desire of all Parties to resolve this matter without further litigation, risk, or other expenses.

2.3   For the mutual consideration acknowledged and accepted herein, all Parties agree to waive, release, discharge and dismiss with prejudice, as to each of the other settling parties, all claims, causes of action, demands for relief or recovery of any

kind; at law or in equity; known or unknown; past, present, or future, including but not limited to attorney's fees, costs or damages of any form as arises from the facts and issues set forth in the Actions, as herein defined. Nothing about these provisions shall constitute a release or waiver as to the Parties' obligations to perform under the terms of this Agreement.

2.4     Upon execution of this Agreement and payment of the funds identified in Section  above, Madera will notify the Department of the Interior that Madera County withdraws any objection to the Tribe's pending fee-to-trust application for the Subject Property.

2.5     Upon acceptance of the Subject Property into trust by the United States Government, and payment of the funds identified in Section 2.1 above, Madera agrees that the Subject Property is no longer subject to ad valorem or other  taxes  or  State, County or local regulations including but not limited to land use, building and construction, and environmental regulations. Upon acceptance of the Subject Property into trust by the Untied States Government, the County agrees that the Subject Property is "Indian Country" as defined in the Stipulation for Entry of Judgment (Madera County), *Tillie Hardwick, et al. v. United States of America et al.*, No. C-79-1710 SW, at Paragraph 2(C), that the Picayune Rancheria, and as defined by 25 U.S.C. §1151.

2.6     The Tribe recognizes and acknowledges that acceptance of the Tribe's fee-to-trust application is controlled by the United States Department of the Interior, and that other considerations, independent of any objection by the County, could influence the progress and timing of acceptance of the Tribe's fee-to-trust application. Madera's withdrawal of any objection to the fee-to-trust application for the Subject Property shall

satisfy Madera's obligation under this provision of the Agreement, regardless of any action or failure to act by the Department of the Interior with regard to the Tribe's fee-to-trust application.

2.7    The parties hereto acknowledge that consideration for this Agreement includes Madera's withdrawal of any appeal or objection relating to the Tribe's fee to trust application for 111.0 acres of real property which joins the Subject Property.  The Tribe acknowledges that on or about June 1, 2006, Madera satisfied this provision of the Agreement by withdrawing Madera's appeal and objection to the fee-to-trust application for the 111.0 acres adjoining the Subject Property.

2.8    The County agrees that it shall not unreasonably object to any application filed by the Tribe to the United States to accept land to be held in trust by the United States for the benefit of the Tribe, and it will not unreasonably object to any decision by the Department of the Interior to accept land into trust for the benefit of the Tribe. Should the County raise any objections as permitted herein, those objections will not be based on the Tribe's need for additional land; the impact on the State, County or subdivisions thereof resulting from the removal of the land from the tax rolls; jurisdictional problems, or potential conflicts of land use.  Nothing in this section shall prohibit the County from commenting on any fee to trust application submitted by the Tribe.

**3.0    Enforcement of this Agreement/Limited Waiver of Sovereign Immunity:** Should a dispute arise as to the application, interpretation, and enforcement of the terms of this Agreement, the Parties agree to submit such dispute to mediation before a mutually agreed upon

qualified mediator familiar with Indian Law. The Tribe agrees to a limited waiver of sovereign immunity for purposes of completion of such mediation.

      3.0.1    Should mediation be impractical, unavailable, or unsuccessful by virtue of the time sensitivity or nature of the issues in dispute, the parties agree that questions of interpretation and enforcement of this agreement may be submitted to the United States District Court for the Northern District in the Tribal Action.  To assure continuing jurisdiction for such dispute resolution, the Parties shall take the following steps in conjunction with settlement of the Tribal Action:

      3.0.1.1  The Tribe shall amend the Tribal Action to name CEDA as a party plaintiff and the Schools as a party defendant.

      3.0.1.2  The parties to the Agreement shall join in a Stipulation and Request to the Northern District that jurisdiction, as currently in place over all parties in the Tribal Action, continue for purposes of application, interpretation, and enforcement of this Agreement. The parties each acknowledge and agree that the Tribe's waiver of sovereign immunity for purposes of the Tribal Action shall continue for purposes of any proceedings for interpretation or enforcement of the Agreement.

      3.0.1.3 The Parties agree that the dispute resolution provisions of this section, including the agreement for continuing jurisdiction of the Northern District, shall apply to disputes arising out of the 2007 MOU.

**4.0    Timing of Performance:**   The Parties agree that this Agreement shall be executed on or before February 14, 2007.

**5.0**    This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but such counterparts, taken together shall constitute but one Agreement. Facsimile signatures by either party to this Agreement shall be legal and binding.

**6.0**    The above-stated recitals are incorporated herein by reference, as material terms of this Settlement Agreement and Stipulation to Jurisdiction.

**7.0**    The parties agree to execute any additional documentation reasonably required to facilitate the terms of this Agreement.

**7.1**    Time is declared to be of the essence as to all terms of this Agreement in every provision herein in which time is an element.

**7.2**    Should any portion or clause of this Agreement be found to be invalid, illegal, void, voidable, or unenforceable for any reason whatsoever, this Agreement shall be read as if it did not contain said portion or clause.  The parties intend for such invalid portion or clause to be severable from the remainder.  Any clause or portion in its severance shall not affect the validity or affect the remaining provisions of this Agreement.

**7.3**    No party to this Agreement shall look to any other party to this Agreement for payment of attorneys' fees and/or costs incurred or paid in association with this Action.  Expressly excepted from this provision is the recovery of attorneys' fees and costs associated with any action, motion or proceeding to enforce the terms of the Agreement.  In such event, the prevailing party in any form of enforcement proceeding

shall be entitled to recovery of all attorneys' fees and costs incurred in enforcement of this Agreement.

7.4     Madera and the Tribe acknowledge that each has read this Agreement, that each fully understands its rights, privileges and duties under the Agreement, and that each enters into the Agreement freely and voluntarily. Each party further acknowledges that it had the opportunity to consult with an attorney of its choice to explain the terms of this Agreement and the consequences of executing it. Each party signing this Agreement expressly represents by its signature that the signing individual has full and complete authority to enter into this Agreement and bind themselves and any and all organizations, organization members, individually and collectively, reserved herein, and entities, corporations, trustees, representatives or assigns which they represent or which might otherwise make any claim through that signing individual.

7.5     The undersigned each acknowledge and represent that no promise or representation or inducement has been made to them, beyond those stated here in writing, and that this Agreement contains the entire understanding between the parties and contains all terms and conditions pertaining to the compromise and settlement of the claims referenced herein. No express or implied warranties, covenants, or representations have been made concerning the subject matter of this Agreement unless expressly stated herein. Any prior written or oral negotiations not contained in this Agreement are of no force or effect whatsoever. In executing this Agreement the parties have not and do not rely on any statements, inducements, promises or representations made by the other party or their agents representatives, or attorneys with regard to the subject matter, basis or effect of this Agreement, except those specifically set forth in this Agreement. The

undersigned further acknowledge that the terms of this Agreement are contractual and not a mere recital.

7.6     This Agreement may not be superseded, modified or amended orally and no modification, waiver or amendment shall be valid unless in writing and signed by the party against whom the modified term is sought to be enforced.

7.7     This Agreement and the provisions contained herein shall not be construed or interpreted for or against any party hereto because said party drafted or caused the party's legal representative to draft any of its provisions.   This Agreement shall be construed without reference to the identity of the party or parties preparing the same, and it is expressly understood and agreed that the parties hereto participated equally or had equal opportunity to participate in the drafting thereof.

7.8     Nothing in this Agreement, whether express or implied, is intended to confer any rights or remedies to any persons other than the parties to it, and their respective successors and permitted assignees.  Nothing in this Agreement is intended to relieve or discharge the obligation or liability of any third party, nor shall any provision give any third party any right or cause of action over or against any party to this Agreement.

IN WITNESS WHEREOF, the parties hereto execute and agree to all terms stated herein.

Dated: _____, 2007          PICAYUNE RANCHERIA OF THE
                                     CHUKCHANSI INDIANS

_____              _____
Chairman for                         Secretary
PROI                                 By its _____

                                     By its _____

CHUKCHANSI ECONOMIC
DEVELOPMENT AGENCY

By its _____

McCARTHY BUILDING COMPANIES,
INC.,

_____

By its _____

YOSEMITE UNIFIED SCHOOL
DISTRICT

*Bill McCabe*

By its  Superintendent

Dated: _____Feb 13_____, 2007

MADERA COUNTY

By  *Vern W. Moss*

_____

Its _____

Dated: _____FEB 13_____, 2007

MADERA COUNTY ASSESSOR

By _____
    Thomas P. Kidwell

Dated: _____Feb 13_____, 2007

MADERA COUNTY TREASURER-TAX
COLLECTOR

By  *Tracy Kennedy Desmond*
    Tracy Kennedy Desmond

CHUKCHANSI ECONOMIC
DEVELOPMENT AGENCY

By its _____

McCARTHY BUILDING COMPANIES,
INC.,

By its _____

YOSEMITE UNIFIED SCHOOL
DISTRICT

By its _____

Dated: _____, 2007   MADERA COUNTY

By   _____

   _____

Its   _____

Dated: _____, 2007   MADERA COUNTY ASSESSOR

By   _____
   Thomas P. Kidwell

Dated: _____, 2007   MADERA COUNTY TREASURER-TAX
COLLECTOR

By   _____
   Tracy Kennedy Desmond

APPROVED AS TO FORM AND CONTENT

OFFICE OF THE
MADERA COUNTY COUNSEL

Dated: _2/13_____, 2007          By _____

David A. Prentice
County Counsel

MONTEAU & PEEBLES, LLP

Dated: _____, 2007       By _____

John M. Peebles
Attorneys for Picayune Rancheria of
the Chukchansi Indians and
Chukchansi Economic Development
Authority

COTA, DUNCAN & COLE

Dated: _2:13_____, 2007          By _____

Dennis M. Cota
Attorneys for Thomas P. Kidwell,
Madera County Assessor, and Tracy
Kennedy-Desmond, Madera County
Treasurer-Tax Collector

TRAINOR FAIRBROOK

Dated: _2/22_____, 2007          By _____

Gary Funamura
Attorneys for McCarthy Building
Companies, Inc.

APPROVED AS TO FORM AND CONTENT

                                    OFFICE OF THE
                                    MADERA COUNTY COUNSEL

Dated: _____, 2007    By:_____
                                         David A. Prentice
                                         County Counsel

                                    MONTEAU & PEEBLES, LLP

Dated: _____, 2007    By _____
                                         John M. Peebles
                                         Attorneys for Picayune Rancheria of
                                         the Chukchansi Indians and
                                         Chukchansi Economic Development
                                         Authority


                                    COTA, DUNCAN & COLE

Dated: _____, 2007    By _____
                                         Dennis M. Cota
                                         Attorneys for Thomas P. Kidwell,
                                         Madera County  Assessor, and Tracy
                                         Kennedy-Desmond, Madera County
                                         Treasurer-Tax Collector


                                    TRAINOR FAIRBROOK

Dated: _____, 2007    By _____
                                         Gary Funamura
                                         Attorneys for McCarthy Building
                                         Companies, Inc.

DEGOEDE & ASSOCIATES

Dated: _____, 2007            By _____
                                             Raymond W. Dunne
                                             Attorneys for Yosemite Unified
                                             School District

# EXHIBIT B

## MEMORANDUM OF UNDERSTANDING

This Memorandum of Understanding ("MOU") is entered into this 14th day of February, 2007 (the "Effective Date"), by and between the Picayune Rancheria of Chukchansi Indians, a federally recognized Indian tribe (the "Tribe"), and the County of Madera, a political subdivision of the State of California (the "County") (together the "Parties").

WHEREAS, the Tribe operates a Class III gaming facility, the Chukchansi Gold Resort & Casino (the "Gaming Facility") within the boundaries of the Picayune Rancheria under the terms of a compact entered into between the Tribe and the State of California (the "Compact"); and

WHEREAS, the purpose of the Gaming Facility is to promote the Tribal economic development, self-sufficiency, self-determination, strong Tribal government and the ability to provide services and benefits to Tribal members; and

WHEREAS, the United States holds approximately 111 acres in trust for the benefit of the Tribe adjacent to the Picayune Rancheria, and the Tribe holds other lands in fee outside the boundaries of the Picayune Rancheria which it intends to be taken into trust by the United States for the benefit of the Tribe; and

WHEREAS, the Parties previously entered into a Memorandum of Understanding, dated August 28, 2001 (the "2001 MOU"), various provisions of which have been in dispute; and

WHEREAS, in conjunction with the settlement reached by the Parties of all outstanding disputes, the Parties have determined that it is necessary and appropriate to enter into this new MOU, representing a new era in the government-to-government relationship between the Parties.

NOW, THEREFORE, the Parties agree as follows:

## 1.0   SCOPE AND APPLICABILITY OF AGREEMENT

1.1   The 2001 MOU is rescinded by the Parties, and shall be superseded in its entirety by this MOU.

1.2   From time to time the Tribe may decide to expand the Gaming Facility, this MOU shall not be interpreted to give the County any authority or rights with regard to such projects beyond what is guaranteed by federal law, the Compact, and the Tribe's Off-Reservation Environmental Policy Ordinance.

1.3     Certain provisions of this MOU, and of the 2001 MOU, are and were dictated by the terms of the Finding of No Significant Impact ("FONSI") issued by the National Indian Gaming Commission ("NIGC") on February 19, 2002 for the original construction and operation of the Gaming Facility. The Parties acknowledge that the Tribe is bound by the terms of the FONSI, but that the NIGC may amend the FONSI upon the reasonable request of the Tribe as the Tribe develops the capacity to provide services which mitigate the off-reservation impacts of the Gaming Facility to replace the mitigation measures identified in the FONSI. The Parties specifically agree that upon development of such mitigation services by the Tribe, the Parties will negotiate in good faith to provide for a corresponding reduction in the payments for such services being made to the County pursuant to the provisions of this MOU.

## 2.0    LAW ENFORCEMENT

2.1     The Tribe shall have the primary responsibility for maintaining order and safety within the boundaries of the Picayune Rancheria and on all lands held in trust by the United States for the benefit of the Tribe, but acknowledges that assistance from the Madera County Sheriff's Department ("MSO") may be required from time to time with respect to the apprehension and arrest of persons engaged in suspected criminal activity. The Tribe and MSO shall meet and confer on a regular basis to update the procedures which enable both entities to respect and assist each other in fulfilling their respective responsibilities as effectively and efficiently as possible.

2.2     MSO shall provide one full-time deputy to be available in the vicinity of the Gaming Facility seven days a week, 24 hours per day, and the Tribe agrees to reimburse the County for all actual costs incurred by the County in providing the requested law enforcement, not including service and supply, plus a 12% add-on for County general and administrative burden. This level of staffing will require five deputies. Unless the Parties mutually agree to another payment schedule, the County shall submit an invoice for law enforcement services to the Tribe on a monthly basis and the Tribe shall pay the invoice to the County within thirty (30) days of the receipt thereof.

2.3     The MSO shall provide an average response time of less than twenty (20) minutes to calls from the Gaming Facility.

2.4     At the request of the Tribe, MSO may agree to provide additional law enforcement and security personnel for special events and functions occurring within the Gaming Facility, within the Rancheria, or on lands held in trust by the United States for the benefit of the Tribe. As to special event services requested by the Tribe, the County will bill the Tribe for the

actual costs of providing such services.   The Tribe will pay such bills within 30 days of receipt.

2.5     The Parties recognize that the Tribe may develop its own law enforcement capacity within the term of this MOU; with the understanding that to extent the Tribe develops such capacity the personnel shall have training equivalent to that of the MSO.  If that should occur, the Parties agree to negotiate a cooperative agreement in good faith which recognizes the authority of the Tribe's law enforcement department, and the criminal jurisdiction delegated to the County pursuant to Public Law 280 (67 Stat. 588).  The Parties agree that cross-deputization of the Tribal and County law enforcement personnel shall be included in such negotiations.

## 3.0     FIRE PROTECTION

3.1     The Tribe agrees to reimburse the County for all actual costs of fire protection staffing under this Agreement incurred by the County, plus a 12% add-on for County general and administrative burden.  This staffing compensation shall provide for two (2) qualified firefighters seven days a week, 24 hours per day.  Labor costs associated with this staffing will be reviewed annually and are subject to annual adjustment in the event of changes in labor contract costs mandated by the director of the California Department of Forestry or by adjustments to the annual published State of California contract rates.  Unless the Parties mutually agree to another payment schedule, the County shall submit an invoice for fire protection services to the Tribe on a monthly basis and the Tribe shall pay the invoice to the County within thirty (30) days of the receipt thereof.

3.2     The staff and equipment described in Section 3.1 will be located at the Coarsegold CDF station.  A new fire station is to be built or purchased near the Project for faster response time.  After start of construction on the gaming facility, and in order to permit these resources to be relocated, the Tribe has contributed $175,000 (of which 50% will be reimbursed to the Tribe by the County as provided herein), toward the construction or purchase by the County of a new fire station within one mile of the Casino.  This station will be located on land provided by the County and will consist of at least a 2000 square foot dormitory/office, a 50 by 60 ft. apparatus garage, and other needed infrastructure.  The parties have agreed upon a mechanism and schedule for reimbursing the Tribe for 50% ($87,500.00) of its contribution from future fire mitigation fees collected within this station's primary response area by the County.  Once the new fire station is ready for operations the staff and equipment described in Section 3.1 will be relocated to that facility.

3.3     The County agrees to discuss and explore joint operations, joint ownership, and Tribal ownership of the station described in Section 3.2.

    3.4    The Madera County Fire Chief and a representative designated by the Tribe shall develop mutually-agreeable operational plans and procedures for fire and basic emergency medical services to the Casino.

## 4.0    TRAFFIC AND ROADS

    4.1    The Tribe has installed and shall continue to maintain a locked gate at the access from the Gaming Facility to County Road 417, and shall permit access only for emergency purposes; provided that the Tribe may use County Road 417 for access to the Gaming Facility for specific reasons of limited duration, if the Tribe gives notice to the MSO when practicable of the time and reason for the access.

    4.2    The Tribe shall continue to have access to its currently-located Tribal administrative facilities from County Road 417. Tribal administrative facility access will be used for that facility only. Any vehicle access from the Tribal administrative parking lot will be physically separated from the Gaming Facility and/or barred by a fence or other means, provided that Tribal administrative personnel shall be permitted to travel directly from the Tribal administrative parking lot to the Gaming Facility.

    4.3    The Tribe will maintain Lucky Lane, otherwise known as the paved portion of Buck Run Lane.

    4.4    In the event the Tribe proposes to develop lands within the Rancheria, and the proposed development involves construction in a County right-of-way, the Tribe agrees to submit a completed application for an Encroachment Permit to the County Road Department. The application will include plans prepared by a California registered civil engineer and any tests or studies deemed necessary by the Road Commissioner or his designee. No construction will begin within the County right-of-way until the Road Commissioner or his designee has approved the plans and issued an Encroachment Permit. The Tribe will pay the appropriate fees and will follow the permit's conditions of approval. Upon completion of construction within the County right-of-way, the Tribe will submit to the County Road Department reproducible as-built plans prepared by either a California registered civil engineer or a California licensed land surveyor, copies of all appropriate tests, and certification from the engineer that all improvements have been built in accordance with County Code.

## 5.0    WATER

5.1   The Parties agree that the work contemplated by the 2001 MOU Section 5.4 concerning the initial collection of water data has been completed, and the Tribe's $25,000.00 financial obligation therein has been fulfilled.

5.2   The Parties agree that the Tribe has contributed $125,000.00 towards a County water study currently underway and being administered by the County, and that this contribution is a portion of the total $225,000.00 water study contribution agreed to by the Tribe in the 2001 MOU at Section 5.5.

5.3   The Tribe agrees to contribute the remaining $75,000.00 of the total water study contribution into a trust account where it will accrue interest. The Tribal/County Advisory Committee shall jointly administer the trust account funds to respond to claims that the Gaming Facility operations are impacting wells close to the Picayune Rancheria. Utilizing the funds in the trust account, the Committee shall investigate complaints of impacts on nearby wells and implement practical, physical solutions to any identified water supply issues. The Committee will investigate complaints regarding impacts to wells within 1 mile of any well utilized by the Gaming Facility. If the Committee determines that the Gaming Facility is the sole reason that the offsite well has unpredictably experienced more than a reasonable draw-down of water levels, the Committee is empowered to utilize the trust account funds to rectify the situation by reasonable means, including well relocation, drilling deeper wells, or proposing alternative pumping rates or intervals.

## 6.0   SOCIAL SERVICES

The Tribe shall make a contribution of $25,000.00 to the County for each year of the term of this MOU, which contribution shall be used to address problem gambling issues in Madera County as determined by the Madera County Behavioral Health Services working with all appropriate County departments and agencies. Payments shall be made on or after July 1 of each year in response to invoices submitted by the County.

## 7.0   DISPUTE RESOLUTION/LIMITED WAIVER OF SOVEREIGN IMMUNITY

7.1   Should a dispute arise as to the application, interpretation, and enforcement of the terms of this MOU, the Parties agree to submit such dispute to mediation before a mutually agreed upon qualified mediator familiar with Indian Law. The Tribe agrees to a limited waiver of sovereign immunity for purposes of completion of such mediation.

7.2   Should mediation be impractical, unavailable, or unsuccessful by virtue of the time sensitivity or nature of the issues in dispute, the Parties agree that

questions of interpretation and enforcement of this MOU shall be submitted to the United States District Court for the Northern District.

7.3   The Tribe agrees to a limited waiver of sovereign immunity for the purposes of completion of mediation and enforcement as provided for at Section 3 of the Settlement Agreement and Stipulation to Jurisdiction agreed to by the Parties on February 14, 2007.

## 8.0   MISCELLANEOUS

8.1   So long as the Tribe operates the only tribal gaming facility within Madera County, 60% of any funds received by the County from the Special Distribution Fund shall be credited against mitigation amounts or fees required to be paid by the Tribe to the County, and the remaining 40% shall be distributed by a committee formed under the applicable laws of the State of California. Upon the opening of a gaming facility within Madera County operated by another tribe, the funds received by the County from the Special Distribution Fund shall be distributed by a committee formed under the applicable laws of the State of California.

8.2   The Parties have established a permanent committee, known as the Tribal/County Advisory Committee. The responsibilities of the Committee include review of any questions related to the implementation of this MOU, and concerns over any matter within the scope of this MOU.

8.2.1   The Committee is comprised of 2 members of the Madera County Board of Supervisors or their designees, and 2 members of the Tribal Council or their designees.

8.2.2   The Committee shall administer the trust fund established pursuant to Section 5.3 herein concerning the impacts on wells close to the Gaming Facility.

8.2.3   The Committee shall meet quarterly, or more frequently, according to procedures established by the Committee.

8.3   This MOU may be modified or amended only by a written instrument executed by the Tribe and the County, pursuant to the same authorizations used to execute this MOU in its original form.

8.4   This MOU is the entire agreement between the Parties and supersedes all prior written and oral agreements, if any, with respect to the subject matter hereof.

8.5   The invalidity of any provision or portion of this MOU shall not affect the validity of any other provisions of this MOU or the remaining portions of

the applicable provisions.  If any provision of this MOU is determined invalid which results in the diminution of any payments or financial obligations of the Tribe to the County, then the Parties shall use their best efforts to renegotiate the terms of the invalid provisions, in the event that the parties are unable to successfully renegotiate the invalid terms, they shall resolve the matters at issue through the dispute resolution provisions of this MOU.

8.6     In the event of a forced delay in the performances by either the Tribe or the County due to acts of God or of the public enemy, act or inaction of the other party or its employees or agents, strikes, lockouts, unusual delay in transportation, unavailability of materials, fires, floods, catastrophic weather or other natural disasters, epidemics, riots, insurrection, war, terrorism, unavoidable casualties, the time for performance of such obligations shall be extended for the period of the forced delay.

8.7     This MOU shall be for an initial term of five (5) years and shall automatically continue for successive five (5) year terms unless on or before the fourth (4th) anniversary date of any such term, either party gives notice in writing to the other party of its intent to modify the MOU. However, this MOU or a modified successor MOU shall remain in full force and effect until the cessation of all gambling operations on the Picayune Rancheria of the Chukchansi Indians, provided that the County shall have no right to invoke the dispute resolution provisions of this MOU to demand an increase in services.

8.8     Throughout the term of this MOU, the Parties agree to exercise good faith and to observe the covenants contained therein.

8.9     The County agrees and authorizes the Tribe to conduct an annual audit of all records regarding the County's compliance with and performance of this MOU.

8.10    Notice of any issue arising under this MOU that cannot be settled by the Tribal/County Advisory Committee shall be served by Certified Mail-Return Receipt Requested on the following representatives of the respective Parties:

**FOR THE TRIBE:**

Tribal Chairperson

46575 Road 417
Coarsegold, California 93614
Telephone: 559-642-3681
Facsimile: 559-642-3683

**FOR THE COUNTY:**

Office of Madera County Counsel
200 West 4th Street
Madera, CA 93637
Telephone: 559-675-7717
Facsimile: 559-675-0214

**FOR THE TRIBE:**

John M. Peebles
Monteau & Peebles, LLP
1001 2nd Street
Sacramento, California 95814
Telephone: 916-441-2700
Facsimile: 916-441-2067

**FOR THE COUNTY:**

Board of Supervisors
200 West 4th Street
Madera, CA 93637
(559) 675-7700

8.11   The Tribe shall submit this MOU to the United States Department of the Interior for either (1) approval pursuant to 25 U.S.C. § 81 ("§ 81"), or (2) a written response that this MOU does not require approval under § 81. The County's signature to this MOU is expressly contingent upon the approval called for in this paragraph, and the County has the right to withdraw its approval of this MOU if this MOU is not submitted to the Department of the Interior pursuant to this Section, or if this MOU not approved pursuant to § 81. The County shall work with the Tribe to secure § 81 review and, if necessary, approval as promptly as possible.

IN WITNESS WHEREOF, the undersigned have executed this MOU.

**PICAYUNE RANCHERIA OF CHUKCHANSI INDIANS,**
**a federally recognized Indian tribe**

By: _____ 2-14-07
     Dustin Graham, Chairman

By: _____ 2-14-07
     Joe Alberta, Secretary

APPROVED AS TO FORM:

MONTEAU & PEEBLES, LLP

By: _____
     John M. Peebles

Page 8 of 9

**COUNTY OF MADERA, a Political Subdivision of
the State of California**

By: _____
         Vern Moss, Chairman

Attest:

By: _____
         Bonnie Holiday, Board Clerk

APPROVED AS TO FORM:

COUNTY COUNSEL

By: _____
         David A. Prentice